UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

PETER RAYMOND MOSCHERA,

                    Plaintiff,            **MEMORANDUM & ORDER**
                                       23-CV-9236(EK)
          -against-

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,[1]

                    Defendant.

--------------------------------------x
ERIC KOMITEE, United States District Judge:

        Plaintiff Peter Moschera challenges the Social Security Administration's denial of his claim for disability insurance benefits.  Before the Court are the parties' cross-motions for judgment on the pleadings.  Moschera argues that the administrative law judge decision improperly evaluated his testimony and medical records on the way to concluding that he was capable of performing "light" work, as defined by agency regulations.  Moschera also argues the decision improperly characterized his prior work as that of a "Bailiff" pursuant to the Dictionary of Occupational Titles, not a "Police Officer." For the following reasons, I grant the Commissioner's motion and deny Moschera's.

---

[1] Frank Bisignano became the Commissioner of Social Security after this complaint was filed.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Bisignano is substituted for Carolyn Colvin, former acting Commissioner of Social Security, as the defendant. *See* 42 U.S.C. § 405(g).

## I.   Background

### A.   Procedural History

In July 2021, Moschera applied for disability benefits, alleging a disability onset date of March 26, 2021. Administrative Tr. ("Tr.") 10, ECF No. 11.[2]  The agency denied his claim.  *Id.*  On November 3, 2022, an administrative law judge ("ALJ"), Brian J. Crawley, held a hearing on Moschera's claim.  *Id.* at 54–81.  ALJ Crawley concluded that Moschera was not disabled and therefore not entitled to disability benefits. *Id.* at 18.  The Appeals Council denied Moschera's request for review of the ALJ's decision, rendering it final.  *Id.* at 1. Moschera timely sought review of that decision in this Court. ECF No. 1.

### B.   The ALJ's Disability Evaluation

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

---

[2] Page numbers in citations to the Administrative Transcript and to briefs refer to native pagination.

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or a combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). If the ALJ identifies a severe impairment, then at step three, he or she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations — the "Listed Impairments." *Id.* § 404.1520(a)(4)(iii), (d); *see also id.* pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. *Id.* § 404.1520(a)(4)(iii).

Here, the ALJ determined that Moschera had not engaged in substantial activity since his alleged onset date. Tr. 13. The ALJ also determined that Moschera suffered from one "severe impairment" — Coronary Artery Disease. *Id.* The ALJ went on to determine, however, that this impairment did not rise to the level of a Listed Impairment. *Id.* at 14.

When the ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he or she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations. 20 C.F.R.

§ 404.1545(a)(1).  The ALJ concluded here that Moschera had the RFC to perform light work with certain limitations.  Tr. 14; *see* 20 C.F.R. § 404.1567(b) (defining "light work").  The ALJ's assessment of Moschera's limitations allowed that he could "lift / carry ten pounds frequently" but twenty pounds only "occasionally," and could "sit six hours and stand / walk six hours in an eight-hour workday, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally stoop, frequently kneel, occasionally crouch or crawl."  Tr. 14.

At step four, the ALJ considers whether, in light of the RFC determination, the claimant can perform "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv), (f).  Here, the ALJ concluded that Moschera's past relevant work should be categorized as that of a "Court Officer [or] Bailiff" under the Dictionary of Occupational Titles, and found that Moschera remained able to perform such work.  Tr. 17.[3]  Given that determination, the ALJ did not reach step five.  He concluded that Moschera was not disabled.  *Id.* at 18.

## II.  Legal Standard

A district court has jurisdiction to review the Commissioner's final judgment denying an application for disability benefits.  42 U.S.C. § 405(g).  The review is limited

---

[3] "Court Officer" is an alternate title for "Bailiff."  Dictionary of Occupational Titles § 377.667-010.

to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[4]  "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive."  42 U.S.C. § 405(g).

### III. Discussion

Moschera raises two arguments on appeal.  First, he argues that the ALJ erred in concluding that he was capable of performing "light work."  Pl.'s Mem. 10, ECF No. 12-1.  Second, Moschera argues that the ALJ should have classified his prior work as that of a "Police Officer," as defined by the Dictionary of Occupational Titles, and not as a "Bailiff."  *Id.* at 12-14. For the reasons set forth below, both arguments lack merit.

**A.    The ALJ's Determination That Moschera Was Capable of Performing "Light Work" Was Supported by Substantial Evidence**

The ALJ concluded that Moschera had the residual functional capacity to perform light work.  Tr. 13.  Moschera

---

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

levels four overlapping arguments against this conclusion. First, Moschera argues the ALJ overlooked testimony regarding his symptoms, such as difficulties with exercising and lifting objects.  Pl.'s Mem. 10-12.  Second, Moschera argues that the ALJ erred in assigning any weight to two medical assessments — those of Doctors Ahmed and Saeed.  Specifically, Moschera contends that the ALJ "picked and chose" parts of the record in concluding that these assessments were consistent with the record as a whole.  *Id.* at 12.  Third, Moschera contends that Drs. Ahmed and Saeed only "*predicted* [his] RFC" going forward when they should have assessed his current functioning.  Pl.'s Statement of Contentions 1, ECF No. 12-2.  Finally, Moschera argues that the ALJ erred in assigning weight to part (but not all) of physician assistant Kaitlyn Hill's medical opinion. Pl.'s Mem. 12.  We address each argument in turn.

"To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, No. 07-CV-803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009), *aff'd*, 370 F. App'x 231 (2d Cir. 2010); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not severe, . . . .

when we assess your [RFC].").  "In making the RFC determination, the ALJ is entitled to weigh all of the evidence available"; his task is "to make an RFC finding that is consistent with the record as a whole."  *Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024).  "In the end, the ALJ's findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence."  *Id.* at *2.

### 1.   Subjective Complaints

Moschera first argues that the testimony and documentary record evidence of his symptoms and limitations do not support a finding that he possessed the RFC for light work. For example, Moschera testified to experiencing "dizziness" if he "get[s] up to[o] quickly," Tr. 66, and that running causes "tightness and soreness" in his chest.  *Id.* at 67.

Section 404.1529(a) instructs ALJs to "consider all [of a claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a); *see also Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) ("The ALJ must consider statements the claimant or others make about her impairment(s), her restrictions, [and] her daily activities . . . .").  An ALJ is required to "consider an individual's statements about the

7

intensity, persistence, and limiting effects of symptoms," and "evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3P, 2017 WL 5180304, at *6 (Oct. 25, 2017). Such evaluation requires a two-step process. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). If so, the ALJ must then consider "the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.*

The ALJ's assessment of an individual's "subjective complaints" regarding her pain and other symptoms is entitled to substantial deference by a reviewing court. *Rivera v. Berryhill*, No. 17-CV-991, 2018 WL 4328203, at *10 (S.D.N.Y. Sept. 11, 2018). In particular, the Second Circuit has cautioned against "second-guess[ing]" the ALJ's decision to discount a claimant's statements about his symptoms "where the ALJ identified specific record-based reasons for his ruling." *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010).

Here, the ALJ properly considered Moschera's symptoms, which led to a finding that he had only one severe impairment: Coronary Artery Disease. Tr. 13. At the first step, the ALJ

8

found that Moschera's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 15. However, the ALJ proceeded to explain that Moschera's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

The ALJ explained his reasoning at length, pointing to specific record evidence in the process. The ALJ noted Moschera's testimony that he (1) retired from his job as a court officer under a regular (not disability-related) retirement, (2) walks on a treadmill for 30 minutes every day at varied speeds and inclines, (3) feels he can lift twenty pounds, even though he was unsure how often, and (4) has no problem in standing or sitting. *Id.* The ALJ also cited Moschera's testimony and written submissions in which he reported being able to help walk and take care of his dog, use a ride-on lawn mower in his yard, and complete personal care, among other things. *Id.* The ALJ also described testimony that Moschera visits family and friends, does light work around the house, maintains his pool, is outside daily, shops for food with his wife, pays his bills, manages his bank accounts, and socializes in person. *Id.*

The ALJ also considered Moschera's reports that he became dizzy if he got up quickly and, if he exerts himself, feels a "little chest pain," along with numbness and soreness on

9

his chest while running.  *Id.* at 14–15.  The ALJ adequately accounted for these reports.  He pointed out that after his surgery, Moschera consistently reported feeling well while denying chest pain, palpitations, or shortness of breath, though he did report occasional dizziness or lightheadedness.  *Id.* at 16.  He noted that Moschera's exams with cardiologists were generally unremarkable; his blood pressure was within a normal range, and his heart rhythm was regular.  *Id.*  Thus, Moschera's "disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."  *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016).

2.   Administrative Medical Findings

Next, Moschera takes issue with two medical assessments of his cardiac condition that the ALJ relied on to conclude that he was capable of "light" work.  Two State Agency Medical Consultants — Drs. Ahmed and Saeed — assessed Moschera's medical records and concluded that he would be able to perform light work within one year of his disability onset (his cardiac surgery).  Moschera first contends that the ALJ "picked and chose" parts of the record to support his conclusion that these assessments were consistent with the record.  As an example, the ALJ allegedly failed to consider whether Drs. Ahmed's and Saeed's assessments that Moschera was capable of light work were consistent with Moschera's reporting of "side effects from his

10

medication such as lightheadedness." Pl.'s Mem. 12. Moschera does not explain why this reporting was necessarily — let alone fatally — inconsistent with the doctors' assessments.

The regulations require an ALJ to evaluate administrative medical assessments based on various factors. At issue here is the ALJ's conclusion as to "consistency" — that is, the extent to which the assessment is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). An ALJ is required to explain his consideration of this factor. *Id.* § 404.1520c(b)(2).[5]

Here, the ALJ sufficiently explained his conclusion that Drs. Saeed's and Ahmed's assessments were consistent with the record. The ALJ pointed to "the nature of [Moschera's] coronary artery disease and cardiology treatment records with unremarkable exams and repeated commentary that [he] feels well or is doing well." Tr. 17; *see, e.g.*, *Sandra Marie C. v. Comm'r of Soc. Sec.*, No. 21-CV-328, 2022 WL 4465415, at *2 (N.D.N.Y. Sept. 26, 2022) (ALJ properly assessed consistency by considering whether any other medical records indicated any

---

[5] Moschera is not challenging the ALJ's conclusion as to "supportability," a factor which requires the ALJ to explain "the objective medical evidence and supporting explanations *presented by* a medical source." 20 C.F.R. § 416.920c(c)(1) (emphasis added); *see* Pl.'s Mem. 12 ("[T]he ALJ stated that the prior administrative examiner's opinions were consistent with the record.").

"regular and on-going mental health treatment").  As to Moschera's lightheadedness, an ALJ "is not required to explicitly analyze every piece of conflicting evidence in the record."  *Shawn W. v. Kijakazi*, No. 20-CV-1513, 2022 WL 4094939, at 18 (N.D.N.Y. Sept. 7, 2022).  Nevertheless, elsewhere in his RFC explanation, the ALJ did explicitly consider Moschera's reports of feeling lightheaded.  Tr. 16-17.[6]

Second, Moschera contends that the assessments by Drs. Ahmed and Saeed are unreliable because they predicted future improvement, rather than assessing his physical limitations at the time of the hearing.  Pl.'s Mem. 13-14.  This argument fails.  Under agency regulations, disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or *can be expected to last* for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505, 416.905(a) (emphasis added).  Drs. Ahmed's and Saeed's assessments "clearly informed the question whether [Moschera's] impairments met that [latter] definition."  *Marcos L. v. Saul*, No. 19-CV-1921, 2021 WL 1152961, at *22 (D. Conn. Mar. 26, 2021).

---

[6] While this discussion was not in the section discussing medical assessments, "the substance of the consistency factor has not been traversed."  *Sandra Marie C.*, 2022 WL 4465415, at *2.

12

On April 1, 2021, Moschera underwent coronary artery bypass surgery.  Tr. 16.  Here, Drs. Saeed and Ahmed both considered (in opinions rendered October 6, 2021, and December 30, 2021, respectively) whether Moschera's medical impairments would meet the 12-month minimum threshold for a disability determination.  Both doctors concluded that Moschera could reasonably be expected to perform the full range of light work within one year from his disability onset date.  *Id.* at 91–92, 108.  Moschera disparages these conclusions as mere "prediction," but does not otherwise meaningfully engage with their viability.

Moschera's description of his experience in cardiac rehabilitation is unavailing.  He points out that in summer 2021 (shortly after his surgery), he achieved an exercise level of five metabolic equivalents of oxygen consumption ("METs") only once in sixteen sessions.  Pl.'s Mem. 11.  But even at this early stage of recovery, Moschera regularly achieved between three and five METs, which is already consistent with the ability to perform light work.  *Driver v. Astrue*, No. 07-CV-3014, 2009 WL 631221, at *5 n.21 (N.D. Ga. Mar. 9, 2009) (explaining that "3-5 METs" is consistent with "light work").  It would stand to reason that his exercise levels would improve with time.

13

In fact, a later opinion supports their predictions. Moschera met with physician assistant Kaitlyn Hill eighteen months after his surgery.  Following a physical examination, she opined that Moschera's physical abilities suggested a capacity for light work with the ability to occasionally lift and carry up to 20 pounds and no limitations for sitting, standing, or walking.  *See* Tr. 1673-76; *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (opinion from nine months before hearing was not "stale," as updated evidence did not raise doubts and was not materially different from it); *Marcos L.*, 2021 WL 1152961, at *22 (rejecting similar argument as "[plaintiff] fails to explain how [the] opinion would have changed if it were issued" one year after onset).

3.   PA-C Hill's Medical Opinion

Relatedly, Moschera contends that the ALJ "picked parts" of physician assistant Hill's medical opinion to support the conclusion that Moschera was capable of light work.  He says the ALJ failed to consider Hill's conclusion that he was "limited to only occasional balancing, climbing, crouching, crawling, kneeling, and stooping."  Pl.'s Mem. 12.  Contrary to Moschera's contention, the ALJ explicitly considered Hill's observation that Moschera could only "occasionally balance, climb, crouch, crawl, kneel or stoop."  Tr. 17.

14

Regardless, the ALJ was under no obligation to adopt the *entirety* of Hill's opinion. An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," so long as he has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Given how Moschera's medical records suggested general improvement, the ALJ reasonably evaluated the medical opinions suggesting a capacity for light work before finding them persuasive. Therefore, the ALJ's ultimate determination "was supported by the examination findings of those examiners and consistent with the overall record." *Vasquez v. King*, No. 23-7816-CV, 2025 WL 366427, at *1 (2d Cir. Feb. 3, 2025).

Accordingly, the ALJ's RFC finding that Moschera possessed the capacity for light work (with certain limitations) was supported by substantial evidence. The ALJ properly considered the evidence in the record including Moschera's subjective complaints and the medical opinion evidence.

**B.   The ALJ Did Not Commit Legal Error by Classifying Moschera's Prior Relevant Work as a Bailiff**

Moschera next argues that the ALJ erred in relying on testimony by a vocational expert ("VE"). He describes a conflict between the VE's testimony that Moschera's past

relevant work was as a "Bailiff," on the one hand, and the Dictionary of Occupational Titles' ("DOT") description of that job, on the other.  Pl.'s Statement of Contentions 1.  Moschera argues his job "is more aligned to the DOT description of a Police Officer," not a Bailiff.  Pl.'s Mem. 14.  He notes that, like a Police Officer (and unlike a Bailiff), he "patrol[led] . . . designated assigned areas" and "investigate[d] causes of incidents."  *Id.*

At step four, "claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003).  Put otherwise, "[t]he inquiry . . . is not whether a claimant is able to perform the duties of her previous job."  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).  Rather, it is "whether the claimant is able to perform the duties associated with her previous 'type' of work."  *Id.*  The ALJ may rely on VE testimony as well as descriptions in the DOT.  *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 127 (2d Cir. 2016); 20 C.F.R. § 416.960(b)(2).  "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . ."  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

16

Here, the ALJ relied on the VE's testimony when finding the DOT description for a "Bailiff" was the same "type of work" as Moschera's past relevant work.  Tr. 80.  The VE testified that an individual with Moschera's RFC would be able to perform the job of "Bailiff" as generally performed.  *Id.* at 79-80.

Moschera claims the VE should have classified his past relevant work as that of a "Police Officer" instead of a "Bailiff."  Under the DOT, a "Bailiff" "[m]aintains order in the courtroom during trial . . .[,] [c]hecks courtroom for security . . . [and] [e]nforces courtroom rules of behavior." Dictionary of Occupational Titles § 377.667-010.  Moschera submitted that in his previous job as a "court officer" he "secured the courthouse by patrolling it" and "secured and protected the judges."  *See* Tr. 256, 262.  Relying on tasks such as this one, he points to the DOT's definition of "Police Officer I."  As generally performed, such a worker "[p]atrols assigned beat on foot, on motorcycle, in patrol car, or on horseback to control traffic, prevent crime or disturbance of peace, and arrest violators."  Dictionary of Occupational Titles § 375.263-014.

Moschera's duties may have differed from that of a prototypical "Bailiff" in some respects, and may have included some responsibilities overlapping with those of a "Police

17

Officer."  Those minor variations did not, however, require the ALJ to reject the VE's testimony.  "Many specific jobs differ from those jobs as they are generally performed, and [the VE] may identify those unique aspects without contradicting the Dictionary."  *Jasinski*, 341 F.3d at 185; *see also Joe N. v. Comm'r of Soc. Sec.*, No. 19-CV-1384S, 2021 WL 4316556, at *6 (W.D.N.Y. Sept. 23, 2021) ("Descriptions of claimant's jobs often differ from the DOT without there being reversible error.").

And such an "alleged misclassification" does not "constitute an apparent unresolved conflict."  *See Harris v. Kijakazi*, No. 20-CV-1133, 2022 WL 541438, at *5 (M.D.N.C. Feb. 23, 2022), *report and recommendation adopted*, 2022 WL 868003 (Mar. 23, 2022).  Moschera is not arguing that "anything in the DOT's job description" of "Bailiff" conflicts with the VE's testimony that he could perform that job as *generally* performed. *Id.*  The ALJ even asked and confirmed on the record whether there was any inconsistency with the DOT.  Tr. 80.

The ALJ thus properly relied on the VE's testimony in concluding that Moschera could perform his former job as generally performed.[7]  Therefore, the ALJ did not commit legal

---

[7] The ALJ and VE discussed two other DOT positions at the hearing: "Deputy, Court" and "Deputy Sheriff, Building Guard."  Tr. 78-80.  If the ALJ and VE had classified Moschera's past relevant work as either of these positions, the outcome would have remained the same, as those positions were

error by relying on the VE's testimony to support his finding at step four that Moschera could perform his past relevant work.

### IV.  Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies Moschera's motion.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

      /s/ Eric Komitee      
ERIC KOMITEE
United States District Judge

Dated:    March 31, 2026
          Brooklyn, New York

---

also "light" occupations under the DOT, and the VE testified that an individual with Moschera's RFC could perform them.  *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (finding remand is unnecessary where application of the correct legal standard could lead to only one conclusion).